## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

JOSEPH EDWARD BOVIN BELSKIS,   :
                              :
            Plaintiff,         :      Civ. No. 21-10322 (RBK) (AMD)
                              :
            v.               :
                              :
DAVID ORTIZ, et al.,          :      **OPINION**
                              :
           Defendants.      :
_____:

**ROBERT B. KUGLER, U.S.D.J.**

### I.    INTRODUCTION

Plaintiff, Joseph Edward Bovin Belskis ("Plaintiff" or "Belskis"), is a former federal prisoner proceeding *pro se* with a civil complaint pursuant to the Federal Tort Claims Act ("FTCA") and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Defendants David Ortiz, Kimberly Kodger, Carl Sceusa, Tavis Hazqynski, Kevin Cassano, Nicoletta Turner-Forster, Pradip Patel, Vicente Elias (collectively the "Individual Moving Defendants") and the United States (collectively with the Individual Moving Defendants the "Moving Defendants") have filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Previously, this matter was administratively terminated as Plaintiff failed to sign his complaint and the motion to dismiss was administratively terminated. (*See* Dkt. No. 100). Thereafter, Plaintiff filed a signed copy of his complaint. (*See* Dkt. No. 105 at 15-36). Accordingly, Moving Defendants' motion to dismiss will be reinstated for analysis. For the following reasons, Moving Defendants' motion is granted in part and denied in part.

## II.        FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was previously incarcerated at F.C.I. Fort Dix in Fort Dix, New Jersey. His complaint raises claims related to the purported lack or inadequate medical care he received while imprisoned there from 2018 to 2019. The following nine Defendants remain in the case:

1. United States
2. David Ortiz – Warden of F.C.I. Fort Dix
3. FNY Kodger, M.D. – Associate Warden of F.C.I. Fort Dix
4. Carl Sceusa, M.D. – Medical/Clinical Director
5. FNY Haczynski – Health Services Administrator
6. Kevin Cassano – Assistant Health Services Administrator
7. Nicoletta Turner-Foster, M.D. – Medical Director
8. Pradeep Patel – Physician
9. Vincente Elias, N.P. – Mid-Level Provider[1]

Plaintiff is a diabetic with a history of lower extremity vascular disease. (*See* Dkt. No. 105 at 28). He suffers from foot ulcers and has had two toes amputated. (*See id.*). A physician prescribed that Plaintiff receive a new pair of special diabetic shoes by July 1, 2018. (*See id.* at 29). On May 7, 2018, Plaintiff reported to the F.C.I. Fort Dix Health Services Unit. (*See id.*). Defendant Sceusa acknowledged that Plaintiff would need a new pair of shoes on July 1, 2018. (*See id.*). However, Plaintiff did not receive a new pair of shoes until over one year later in August, 2019. (*See id.*). During the period from July, 2018, to August, 2019, Plaintiff complained to a host of people that he needed new shoes so he could walk without further injury to his feet. (*See id.*). Plaintiff explains that "throughout this time" he complained to Defendants Ortiz, Sceusa, Kodger, Hacynski, Cassano, Turner-Foster, Patel and Elias. (*See id.*). Plaintiff states the new diabetic shoes he received on August 7, 2019 were not meant for diabetics who had toe amputations. Thus, Plaintiff could not walk properly in them. (*See id.*).

---

[1] The United States District Court for the District of Maine granted Defendant Barry Wisler's separate motion to dismiss Plaintiff's complaint against him prior to transferring this case to this Court. (*See* Dkt. No. 84). Thus, Wisler is no longer a part of this action.

On August 12, 2019, Plaintiff returned to the Health Services Unit and complained to Defendant Haczynski that he could not walk properly in the newly issued shoes. (*See id.*). Defendant Haczynski refused to listen to Plaintiff and told him that he would take the newly issued shoes back and order him regular institution boots if he was not satisfied. (*See id.*)

Plaintiff complains not only about the delay in receiving his prescribed diabetic shoes by July 1, 2018, but also that once he received diabetic shoes, they caused him extreme pain. (*See id.*). Plaintiff claims he suffered an increased risk of further amputations, extreme pain in his feet and legs, ankle inversion, bipedal instability and diabetic foot ulcers as a result. (*See id.* at 5).

On September 9, 2019, the Federal Bureau of Prisons Philadelphia Regional Counsel's office received Plaintiff's administrative tort claim seeking $10,000,000 in damages. (*See* Dkt. No. 91-1 at 32). On October 21, 2019, the United States District Court for the District of Maine received Plaintiff's complaint in this action. (*See* Dkt. No. 1). By the time Plaintiff filed his complaint in federal court, he was now housed at a halfway house in Portland, Maine. (*See* Dkt. No. 105 at 16).

Plaintiff sues the United States under the FTCA for medical malpractice and negligence. He brings *Bivens* claims against the Individual Moving Defendants for violating his right to be free from cruel and unusual punishment under the Eighth Amendment. He seeks monetary damages for his injuries. Plaintiff was released from incarceration on November 25, 2019. (*See* Dkt. No. 7). Plaintiff continues to reside in Maine.

On March 6, 2020, the Bureau of Prisons denied Plaintiff's administrative tort claim. (*See* Dkt. No. 91-1 at 39). The denial stated if Plaintiff was still dissatisfied, he could sue the United States within six months in an appropriate United States District Court. (*See id.*).

Thereafter, in this federal civil case, the District of Maine rejected Plaintiff's numerous attempts to seek the appointment of pro bono counsel throughout 2020 and into early 2021. (*See* Dkt. Nos. 4, 19, 30, 34, 37, 63, 76). On November 12, 2020, Moving Defendants filed a motion to dismiss or in the alternative transfer venue. (*See* Dkt. No. 59). Plaintiff then sought and received extensions of time to file a response to Moving Defendants' motion to dismiss or in the alternative transfer venue. (*See* Dkt. No. 60, 66, 69). On February 22, 2021, Plaintiff filed his response in opposition to the Moving Defendants motion to dismiss or transfer venue. (*See* Dkt. No. 74 & 75). Moving Defendants filed their reply in support of their motion on March 5, 2021. (*See* Dkt. No. 82). On April 26, 2021, the District of Maine transferred this action to this Court. (*See* Dkt. No. 84).

On June 25, 2021, Moving Defendants filed their motion to dismiss in this Court. (*See* Dkt. No. 91). The United States seeks dismissal of Plaintiff's complaint against it pursuant to Federal Rule of Civil Procedure 12(b)(1) alleging this Court lacks subject matter jurisdiction. More specifically, the United States argues Plaintiff's FTCA claim should be dismissed because Plaintiff did not exhaust his administrative remedies prior to filing an FTCA claim against it in federal court. The Individual Moving Defendants seek dismissal of Plaintiff's *Bivens* claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing Plaintiff has failed to state an Eighth Amendment claim against them.

At the time Moving Defendants filed their motion to dismiss, the operative complaint in this action was the complaint Plaintiff filed in the District of Maine. (*See* Dkt. No. 1). However, Plaintiff failed to sign that complaint. Thus, on February 1, 2022, this Court gave Plaintiff twenty-one (21) days in which to file a signed copy of his complaint. (*See* Dkt. No. 98). Having failed to submit a signed complaint within the time allotted, this Court then struck Plaintiff's

complaint for failure to include a signature under Federal Rule of Civil Procedure 11(a). (*See* Dkt. No. 100). Thereafter, Plaintiff was given additional time in which to file a signed complaint. (*See* Dkt. No. 102). Plaintiff then filed a signed copy of his original complaint. (*See* Dkt. No. 105 at 15-36). Accordingly, the Clerk shall be ordered to file this *signed* complaint as the operative pleading in this matter.[2] Furthermore, now that Plaintiff has submitted a signed complaint, Moving Defendants' motion to dismiss the complaint (*see* Dkt. No. 91) is also reinstated for analysis.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(1) Standard

A defendant may move to dismiss a complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) by challenging jurisdiction facially or factually. *See Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). A facial challenge to subject-matter jurisdiction "considers a claim on its face and asserts that it is insufficient to invoke the subject-matter jurisdiction of the court because, for example, it does not present a question of federal law[.]" *Id.* at 358. In contrast, a factual challenge "is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Id.* Drawing this distinction is important because it "determines how the pleading must be reviewed." *Id.* at 357–58 (citing *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)). In analyzing a facial challenge, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto[.]" *Constitution Party of Pennsylvania*, 757 F.3d at 358 (citing *In re Schering Plough*

---

[2] Plaintiff also submitted a prior habeas petition he filed that this Court denied in Civ. No. 19-8669. (*See* Dkt. No. 105 at 3-14). Accordingly, that portion of Plaintiff's recent submission will not be considered as part of his operative complaint in this civil rights action.

*Corp. Intron*, 678 F.3d at 243). Whereas in considering a factual challenge to subject-matter jurisdiction, the court "may look beyond the pleadings to ascertain the facts." *Id*. Furthermore, in considering a factual challenge to subject matter jurisdiction, "the plaintiff's allegations enjoy no presumption of truthfulness, and [the plaintiff] bears the burden of establishing jurisdiction." *Meehan v. Taylor*, No. 12–4079, 2013 WL 4517943, at *2 (D.N.J. Aug. 26, 2013) (citing *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008); *Mortensen v. First Fed. Sav. Loan Ass'n.*, 549 F.2d 884, 891 (3d Cir. 1977)). A motion to dismiss for failure to exhaust administrative remedies, like the one raised in this case by the United States, is considered a factual challenge. *See, e.g., Diaz v. United States*, No. 20-6305, 2021 WL 3022452, at *2 (E.D. Pa. July 16, 2021) (citing *Medina v. City of Phila.*, No. 04-5698, 2005 WL 1124178, at *2 (E.D. Pa. May 9, 2005)).

   B.   Rule 12(b)(6) Standard

   Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss under Rule 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

   "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Iqbal*, 556 U.S. at 678. This "plausibility standard" requires that the complaint allege "more than a sheer possibility

that a defendant has acted unlawfully," but it "is 'not akin to a probability requirement.'" *Id.*
(quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more
than an unadorned, the defendant-harmed-me accusation" must be pleaded; it must include
"factual enhancements" and not just conclusory statements or a recitation of the elements of a
cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-
specific task that requires the reviewing court to draw on its judicial experience and common
sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer
more than the mere possibility of misconduct, the complaint has alleged—but it has not
'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).
However, courts are "not compelled to accept 'unsupported conclusions and unwarranted
inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy
Res. Inc. v. Pa. Power & Light* Co., 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion
couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

A court conducts a three-part analysis in analyzing a motion to dismiss pursuant to Rule
12(b)(6). *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court
must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556
U.S. at 675). Second, the court should identify allegations that, "because they are no more than
conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at
680). Finally, "where there are well-pleaded factual allegations, a court should assume their
veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* '

In this case, Plaintiff's complaint is liberally construed by this Court he is proceeding *pro
se*. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

## IV.    DISCUSSION

A.  <u>FTCA Claim</u>

The United States asserts Plaintiff's FTCA claim must be dismissed because Plaintiff

failed to exhaust his administrative remedies. "The FTCA operates as a limited waiver of the

United States' sovereign immunity." *White–Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d

Cir. 2010) (citation omitted). Under the FTCA, the United States is liable "in the same manner

and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. An

incarcerated FTCA plaintiff may sue only the United States, may seek only monetary damages,

and may not recover for mental or emotional damages in the absence of physical injury. *See* 28

U.S.C. § 1346(b)(1)–(2) (providing jurisdiction for "civil actions on claims against the United

States, for money damages" and providing that incarcerated felons may not bring actions "for

mental or emotional injury suffered while in custody without a prior showing of physical

injury."); *CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008) ("The Government is the

only proper defendant in a case brought under the FTCA.").

A plaintiff suing under the FTCA must present the offending agency with notice of the

claim, including a "sum certain" demand for monetary damages. *See White–Squire*, 592 F.3d at

457. "Because the requirements of presentation and a demand for a sum certain are among the

terms defining the United States's consent to be sued, they are jurisdictional." *Id.* (citing *United

States v. Sherwood*, 312 U.S. 584, 587 (1941)). These requirements cannot be waived. *See id.*

(citing *Bialowas v. United States*, 443 F.2d 1047, 1049 (3d Cir. 1971)).

Under the FTCA:

> A tort claim against the United States shall be forever barred
> unless it is presented in writing to the appropriate Federal agency
> within two years after such claim accrues or unless action is begun
> within six months after the date of mailing, by certified or

> registered mail, of notice of final denial of the claim by the agency
> to which it was presented.

28 U.S.C. § 2401(b). A plaintiff must satisfy both provisions of § 2401(b) for an FTCA

complaint to be timely. *See Seiss v. United States*, 792 F. Supp. 2d 729, 732 (D.N.J. 2011)

(collecting cases and finding that both provisions of § 2401(b) must be satisfied for an FTCA

complaint to be timely); *see also Martinez v. United States Postal Service*, No. 15–8545, 2016

WL 6892074, at *3 (D.N.J. Nov. 22, 2016). Additionally, the FTCA provides that:

> [a]n action shall not be instituted upon a claim against the United
> States for money damages for injury or loss of property or personal
> injury or death caused by the negligent or wrongful act or omission
> of any employee of the Government while acting within the scope
> of his office or employment, unless the claimant shall have first
> presented the claim to the appropriate Federal agency and his claim
> shall have been finally denied by the agency in writing and sent by
> certified or registered mail. The failure of an agency to make final
> disposition of a claim within six months after it is filed shall, at the
> option of the claimant any time thereafter, be deemed a final denial
> of the claim for purposes of this section.

28 U.S.C. § 2675(a).

The United States argues Plaintiff failed to exhaust his administrative remedies because

he filed this action in the District of Maine in October, 2019, only one month after he filed his

administrative tort claim with the Bureau of Prisons in September, 2019, well prior to the Bureau

of Prisons' March 6, 2020 denial. According to the United States, the fact that the Bureau of

Prisons subsequently denied Plaintiff's administrative tort claim in March, 2020, while this

action was pending, does not change the outcome that Plaintiff needed to file suit within six

months *after* the Bureau of Prisons arrived at its denial decision. This Court agrees. *See Smith v.*

*Riley*, No. 14-7247, 2015 WL 4615913, at *5 (D.N.J. July 31, 2015) (citing *Wadhwa v.*

*Nicholson*, 367 F. App'x 322, 324 (3d Cir. 2010)) (dismissing claims against the United States

because plaintiff failed to satisfy strict requirement that he exhaust before instituting a civil

action against the United States); *see also Turulski v. Dep't of Veteran's Affairs*, No. 18-779, 2019 WL 130352, at *2 (D. Del. Jan. 8, 2019) (citing *McNeil v. United States*, 508 U.S. 106, 107 (1993); *Priovolos v. Federal Bureau of Investigation*, 686 F. App'x 150, 152 (3d Cir. 2017) ("If a plaintiff files an FTCA suit before exhausting his administrative claim, the case must be dismissed, even if the plaintiff exhausts before substantial progress is made in the litigation.").

Plaintiff asserts though that equitable tolling should save his FTCA claim from dismissal. This Court disagrees. Initially, Plaintiff invokes equitable tolling for filing his action *too early*, not *too late*. As a panel of the Third Circuit has noted though, "equitable tolling is a doctrine that traditionally applies when a plaintiff files his claim too late, not too early" as Plaintiff did in this case. *See Walker v. United States*, 616 F. App'x 497, 500 (3d Cir. 2015) (citing *Santos ex. rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009)); *see also Hinton v. United States*, 660 F. Supp. 2d 22, 27 (D.D.C. 2009) ("Plaintiff's arguments regarding equitable tolling are irrelevant. The United States does not move to dismiss Plaintiff's FTCA claim because it was filed too late, but because it was filed too early."). Here, Plaintiff is not entitled to equitable tolling as his complaint was filed *too early* rather than *too late*.

Furthermore, even if equitable tolling is somehow cognizable in this case, Plaintiff has failed to establish that he is entitled to it. In *Walker*, the District of Delaware noted the type of equitable tolling Plaintiff seeks here, namely where a plaintiff files an FTCA suit too early before exhausting his administrative remedies. That Court explained such a request for tolling should be considered as seeking to toll § 2401(b)'s six months limitations period. *See Walker v. United States*, No. 11-866, 2013 WL 5890270, at *7 (D. Del. Oct. 31, 2013) (citing *Estate of George v. Veteran's Admin. Med. Ctr.,* 821 F.Supp.2d 573, 580–81 (W.D.N.Y.2011); *Mar v. United States,* No. 08–0644, 2009 WL 737040, at *1–4 (E.D. Cal. Mar. 19, 2009)), *report and recommendation*

*adopted by*, 2014 WL 2917084 (D. Del. June 25, 2014), *aff'd by*, 616 F. App'x 497. In the

context of equitable tolling and the FTCA though, the Third Circuit has explained as follows:

> [e]quitable tolling, if available, can rescue a claim otherwise barred
> as untimely by a statute of limitations when a plaintiff has "been
> prevented from filing in a timely manner due to sufficiently
> inequitable circumstances." *Seitzinger v. Reading Hosp. & Med.
> Ctr.,* 165 F.3d 236, 240 (3d Cir.1999). "This occurs (1) where the
> defendant has actively misled the plaintiff respecting the plaintiff's
> cause of action; (2) where the plaintiff in some extraordinary way
> has been prevented from asserting his or her rights; or (3) where
> the plaintiff has timely asserted his or her rights mistakenly in the
> wrong forum." *Hedges* [*v. United States*]*,* 404 F.3d [744] at 751
> [(3d Cir. 2005)] (internal citations omitted); *School Dist. v.
> Marshall,* 657 F.2d 16, 19–20 (3d Cir.1981) (internal citations
> omitted).
>
> But a plaintiff will not receive the benefit of equitable tolling
> unless she exercised due diligence in pursuing and preserving her
> claim. *Irwin* [*v. Dep't of Veterans Affairs*]*,* 498 U.S. [89] at 96, 111
> S. Ct. [453] at 457–58 [(1990)]. The principles of equitable tolling
> thus do not extend to "garden-variety claims of excusable neglect."
> *Id.* at 96, 111 S. Ct. at 458. The remedy of equitable tolling is
> extraordinary, and we extend it "only sparingly." *Id.* at 96, 111 S.
> Ct. at 457; *Hedges,* 404 F.3d at 751. It is especially appropriate to
> be restrictive with respect to extension of equitable tolling in cases
> involving the waiver of the sovereign immunity of the United
> States. The Supreme Court made that point clear when it indicated
> that inasmuch as the FTCA "waives the immunity of the United
> States, ... in construing the [FTCA's] statute of limitations, which is
> a condition of that waiver, we should not take it upon ourselves to
> extend the waiver beyond that which Congress intended," and the
> Court should not "assume the authority to narrow the waiver that
> Congress intended." [*United States v.*] *Kubrick,* 444 U.S. [111] at
> 117–19, 100 S. Ct. [352] at 357 [(1979)].

*Santos ex rel. Beato*, 559 F.3d at 197-98.

Plaintiff does not show that Defendants actively misled him regarding his cause of action.

Indeed, the Bureau of Prisons' March 6, 2020 denial of Plaintiff's administrative tort claim

expressly told Plaintiff he had six months to bring suit if he was unsatisfied with its denial of his

administrative tort claim. (*See* 91-1 at 39). Nor does Plaintiff adequately show that he *timely*

asserted his right, but in the wrong forum. As described above, Plaintiff's complaint in this action was premature, and therefore not timely. Once Plaintiff received the March 6, 2020 notice from the Bureau of Prisons, Plaintiff had several months in which he could have refiled his FTCA action as well as his *Bivens* claims in a new action. By that point, his FTCA claim was properly administratively exhausted and his *Bivens* claims would have presumably still been timely as well.[3]

Next, Plaintiff alludes to the COVID-19 pandemic as an extraordinary circumstance that prevented him from properly filing his FTCA claim against the United States in federal court. First, this Court notes that Plaintiff was no longer incarcerated when the Bureau of Prisons issued its denial of his administrative tort claim. Thus, there is no, nor can there be any allegation that Plaintiff's incarceration and any related COVID-19 procedures an institution may have taken to lessen the spread of the disease impacted him. Furthermore, Plaintiff made several filings in this case between March 6, 2020 and July 1, 2020 (when presumably the statute of limitations on his *Bivens* claims may have expired at the earliest, *see supra* note 2). Thus, given that Plaintiff clearly showed the ability to file documents, this Court finds that the COVID-19 pandemic does not constitute an extraordinary circumstance which prevented Plaintiff from properly filing an FTCA suit after his administrative tort claim was administratively exhausted on March 6, 2020.

---

[3] The statute of limitations for *Bivens* claims is taken from the forum state's personal injury statute. *See Hughes v. Knieblher*, 341 F. App'x 749, 752 (3d Cir. 2009). New Jersey's statute of limitations for personal injury causes of action is two years. *See* N.J. Stat. Ann. § 2A:14-2, Plaintiff's two-year statute of limitations for filing a civil action asserting these claims under *Bivens* presumably then may have expired — at the earliest on July 1, 2020, or two years after the delay to Plaintiff receiving new diabetic shoes began. *See Hughes*, 341 F. App'x at 752 (a *Bivens* claim accrues when the plaintiff knows, or has reason to know, of the injury that forms the basis of the action).

Finally, Plaintiff complains about the length of time it took the District of Maine to rule on Moving Defendants' motion to dismiss/transfer venue. However, that motion was not even filed by the Moving Defendants until November 21, 2020, more than two months after Plaintiff's six-month period in which to file his FTCA claim in federal court expired on September 6, 2020. This Court fails to see how Plaintiff was prevented in an extraordinary way from properly and timely pursuing his FTCA claim. The fact that Plaintiff may have been unknowledgeable about the applicable limitations period and the law accompanying it does not constitute an extraordinary circumstance to warrant equitable tolling. *C.f.*, *Ross v. Varano*, 712 F.3d 784, 799-800 (3d Cir. 2013) (noting in habeas context that lack of legal knowledge or training alone does not justify equitable tolling). However, as previously noted, going even one step further, in this case, Plaintiff was not even unknowledgeable about the applicable filing period given that the Bureau of Prisons on March 6, 2020 expressly told him when he needed to file. Plaintiff could have refiled both his FTCA claim and his *Bivens* claims after March 6, 2020 and before July 1, 2020 to make them timely.

Accordingly, for the foregoing reasons, the United States' motion to dismiss the FTCA claim against it is granted.

### B. *Bivens* Claims

Plaintiff also brings claims against the Individual Moving Defendants pursuant to *Bivens*. The Supreme Court has recognized, *in limited situations*, a private cause of action against federal officials. *See Bivens*, 403 U.S. at 389. "A *Bivens* action, which is the federal equivalent of the § 1983 cause of action against state actors, will lie where the defendant has violated the plaintiff's rights under color of federal law." *Brown v. Philip Morris*, *Inc.*, 250 F.3d 789, 800 (3d Cir. 2001); *see also Bistrian v. Levi*, 912 F.3d 79, 88 (3d Cir. 2018) (stating "*Bivens* is the short-hand

name given to causes of action against federal officials for alleged constitutional violations.").
"In order to state a claim under *Bivens*, a claimant must show: (1) a deprivation of a right secured
by the Constitution and laws of the United States; and (2) that the deprivation of the right was
caused by an official acting under color of federal law." *Doty v. United States*, Civ. No. 15-3016,
2016 WL 3398579, at *6 (D. N.J. June 15, 2016) (citations omitted).

     *Bivens* permits a damages remedy "to compensate persons injured by federal officers who
violated the prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, 137 S. Ct.
1843, 1854 (2017). The Supreme Court has extended *Bivens* to only a few other limited
constitutional violations. *See id.* For example, in *Davis v. Passman*, 442 U.S. 228 (1979), the
Supreme Court held that the Fifth Amendment Due Process Clause gave an administrative
assistant a damages remedy against a Congressman for firing her due to gender. *See Ziglar*, 137
S. Ct. at 1854. In *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court held the Eighth
Amendment gave a prisoner's estate a damages remedy against prison officials for failing to
provide adequate medical treatment. *See Ziglar*, 137 S. Ct. at 1855; *see also Dongarra v. Smith*,
27 F.4th 174, 180 (3d Cir. 2022) (noting the Supreme Court has only recognized implied causes
of action in *Bivens*, *Davis* and *Carlson*). Plaintiff's *Bivens* claims against the Individual Moving
Defendants fall within its purview since Plaintiff seeks relief against them for their purported
deliberate indifference to his serious medical needs.

> For the delay or denial of medical care to rise to a violation of the
> Eighth Amendment's prohibition against cruel and unusual
> punishment, a prisoner must demonstrate "(1) that defendants were
> deliberately indifferent to [his] medical needs and (2) that those
> needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.
> 1999). Deliberate indifference requires proof that the official
> "knows of and disregards an excessive risk to inmate health or
> safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582
> (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837,
> 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). We have found

> deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

*Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013). Deliberate indifference can also be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (*quoting Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987))).

The Individual Moving Defendants rely on qualified immunity to support their dismissal motion. Qualified immunity protects officials who violate a plaintiff's federally protected right, so long as the right was not clearly established by law. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Whether government officials can assert qualified immunity is resolved by a two-part test: (1) whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right and, if so; (2) whether the right at issue was "clearly established" at the time

of the defendant's alleged misconduct. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Walker v. Coffey*, 905 F.3d 138, 144 (3d Cir. 2018) (footnotes omitted).

"[T]he clearly established right must be defined with specificity." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). Thus, "[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658 (2012)). Qualified immunity is designed to allow government officials to make reasonable judgments, even if they are mistaken, about open legal questions. It is intended to protect "all but the plainly incompetent or those who knowingly violate the law." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). Qualified immunity has been defined as a "fair warning" standard by the Supreme Court, meaning that if the federal right is clearly established, the official is sufficiently on notice and may be held monetarily liable. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Qualified immunity "will attach if the official can demonstrate his conduct was 'objectively reasonable.'" *Davis v. Malitzki*, 451 F. App'x 228, 232 (3d Cir. 2011).

A right is clearly established when precedent exists that is like the case at hand, although the facts of the precedent do not need to be "materially similar." *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Hope*, 536 U.S. at 739, While there is no need for a "case directly on point . . . existing precedent must have placed the statutory or constitutional question beyond debate," and the "violative nature of particular conduct" must not be defined at a "high level of generality." *See Ashcroft v. Al-Kidd*, 563 U.S. 731, 741-42 (2011). To determine whether a right is clearly established, "we look first for 'applicable Supreme Court precedent.' If none exists, we consider whether there is a case of controlling authority in our jurisdiction or a 'robust consensus

of cases of persuasive authority in the Courts of Appeals that could clearly establish a right for purposes of qualified immunity.'" *Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist.*, 877 F.3d 136, 142 (3d Cir. 2017) (citing *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016)).

The Individual Moving Defendants assert Plaintiff failed to allege an objectively sufficiently serious deprivation and/or failed to allege they were deliberately indifferent to his health and safety. According to them, Plaintiff's complaints about the delay and the difference of opinion concerning what shoe he should have been issued are insufficient to state a constitutional claim. For the following reasons, at this pleading stage, this Court disagrees.

Plaintiff names all eight Individual Moving Defendants expressly and states that that he complained to all of them "throughout this time." (*See* Dkt. No. 1 at 15). This Court interprets this to mean that Plaintiff complained to the Individual Moving Defendants from July 1, 2018, through the period of his complaints about the fit of his shoes in August, 2019.[4] A physician prescribed that Plaintiff needed new diabetic shoes by July 1, 2018. As the Individual Moving Defendants themselves recognize in their brief, a delay in medical treatment based on a non-medical reason or preventing a prisoner from receiving recommended medical treatment can constitute deliberate indifference. *See Rouse*, 182 F.3d at 197. Given Plaintiff's complaints to them, the Individual Moving Defendants were presumably all on notice about Plaintiff's lack of care but did nothing. Accordingly, at this early pleading stage, this Court finds Plaintiff has sufficiently alleged deliberate indifference against the Individual Moving Defendants.

---

[4] The Individual Moving Defendants assert Plaintiff's "throughout this time" reference only refers to the period after he received the purportedly defective shoes. However, this must liberally construe Plaintiff's complaint and construes this allegation as including the period between July 1, 2018 and August 7, 2019 for which Plaintiff complained to the Individual Moving Defendants.

The Individual Moving Defendants next argue that Plaintiff failed to allege that he suffered from a sufficiently serious deprivation. In making this argument, the Individual Moving Defendants cite to and rely on this Court's decision in *Foreman v. Bureau of Prisons*, No. 04-5413, 2005 WL 3500807 (D.N.J. Dec. 20, 2005), *aff'd by*, C.A. No. 06-1274, 2007 WL 108457 (3d Cir. Jan. 16, 2007). That case though is distinguishable.

First, *Foreman* involved this Court applying a summary judgment standard, not a motion to dismiss standard under Rule 12(b)(6). This Court summarized the facts in *Foreman* as follows:

> In 2002, one of the plaintiff's treating physicians expressed concern that Foreman's shoes may not have adequately fit him. He noted the importance for Foreman to have "protective footwear on him that keeps his foot warm and there is no pressure." (*See* Dr. Silver's Note, attached as Exhibit 9 to Def. Mem.) Furthermore, he added that it was irrelevant what form the shoe took as long as "it fits him." (*See* Dr. Silver's Note, attached as Exhibit 9 to Def. Mem.) Thereafter, the defendant was given an authorization form to receive shoes from an outside source, and he also received authorization to buy new shoes at the prison commissary. (*See* Inmate Request dated Aug. 3, 2000, attached as Exhibit 5 to Def. Mem.; Inmate Request Form, attached as Exhibit 10 to Def. Mem.) Although plaintiff did not receive the shoes his mother subsequently sent him because of an interim change in prison policy, he did receive (1) a new pair of high top sneakers from the commissary and (2) a letter from the assistant warden that the prison would make sure he had medically appropriate footwear. (*See* Disposition Letter from J. Henry, dated 3/29/04, attached as Exhibit D to Pl. Opp.; Email from J. Tilghman, dated 6/29/04, attached as Exhibit 19 to Def. Mem.) A month after Foreman received these new shoes from the commissary, he had a doctor's appointment wherein there was no indication of any problems with Foreman's feet. (*See* Record of Medical Care, attached as Exhibit 14 to Def. Mem.) Moreover, throughout the plaintiff's incarceration at FCI Fairton, the prison staff has been responsive to plaintiff's podiatric complaints by providing multiple doctor consultations, medication, and topical treatments. (*See* Def. Mem. at 3–5.)

*Foreman*, 2005 WL 3500807, at *9. With respect to Foreman's *Bivens* claim, this Court held as follows:

> Foreman's deliberate indifference claim must fail because (1) the prisoner cannot make a claim for medical indifference unless the alleged denial at issue caused harm and (2) a mere disagreement over the proper treatment does not constitute a constitutional claim. *Monmouth County,* 834 F.2d at 346; *Davidson v. Scully,* 155 F.Supp.2d 77, 84 (S.D.N.Y.2001); *Munoz v. Marshall,* No. 94–1839, 1994 WL 508633, at *3 (N.D. Cal. Sept.8, 1994) (citation omitted). Here, although the plaintiff did not receive the particular shoes he wanted from his mother, he did receive new shoes from the commissary, and there is no indication that he has had serious problems with his feet due to those new shoes. *Cf. Saunders v. Horn,* 959 F. Supp. 689, 694 (E.D.Pa.1996) (finding deliberate indifference where prison staff failed to provide any appropriate footwear to inmate and instead chose to ignore his podiatric needs). In addition, just because the plaintiff wants a particular kind of medical shoe does not mean that the provision of different shoes constitutes deliberate indifference. *Davidson,* 155 F. Supp. 2d at 84 (finding no constitutional violation where inmate received treatment for podiatric problems, but complained that he wanted a different course of treatment including different orthopedic shoes than the ones provided by the prison); *Munoz,* 1994 WL 508633, at *2 (failure to permit inmates to wear the most comfortable or desirable apparel does not rise to level of constitutional violation). Consequently, the plaintiff here does not allege a sustainable deliberate indifference claim because the defendants were responsive to plaintiff's foot condition, and plaintiff has not shown that the footwear provided to him was so deficient as to cause serious harm.

*Foreman*, 2005 WL 3500807, at *9.

Plaintiff in this case alleges not only a complaint about the quality of the shoes he received, but also challenges the delay of over one year whereby he failed to receive physician prescribed shoes. As previously noted, the delay of necessary medical treatment can constitute deliberate indifference if it was for non-medical reasons. Discovery is warranted to resolve the root cause of the delay.

Furthermore, unlike the plaintiff in *Foreman*, Plaintiff indicates he made complaints about how his shoes were hurting him after he received them. This Court disagrees with the Individual Moving Defendants assertion that Plaintiff failed to allege injuries during the delay as well as after he received the shoes. Indeed, Plaintiff states in the injury section of his complaint that he suffered from: (1) increased risk of further amputations; (2) extreme pain in feet and legs; (3) ankle inversion; (4) bipedal instability; and (5) diabetic foot ulcers. (*See* Dkt. No. 1 at 5). A liberal reading of the complaint leads this Court to construe Plaintiff's complaint about these injuries both during the period from July 1, 2018 up to and including the time he received the shoes and continued to complain about his new shoes in August, 2019.

This Court also rejects the Individual Moving Defendants argument that Plaintiff failed to allege the denial of a clearly established federal right. As noted above, delays in necessary medical treatment based on a nonmedical reason, preventing a prisoner from receiving needed or recommended treatment and/or persisting in a course of treatment in the face of resultant pain and risk of permanent injury, are clearly established rights. *See McCluskey*, 505 F. App'x at 202; *Rouse* 182 F.3d at 197. Plaintiff has sufficiently alleged these clearly established rights both with respect to the delay in receiving shoes and in the Individual Moving Defendants' course of continuing with treatment (i.e. the new shoes he did receive) which caused him pain.

Defendants Ortiz and Kodger separately and individually assert the *Bivens* claims against them should be dismissed because Plaintiff only brings claims against them as supervisors. It is true that there is no *respondeat superior* theory of liability under *Bivens*. Rather, a defendant must have personal involvement in the constitutional violation for liability to attach. *Iqbal*, 556 U.S. at 676. A supervisor, however, may be liable for his own misconduct. *See Barkes v. First Corr. Medical, Inc.*, 766 F.3d 307, 320 (3d Cir. 2014), *reversed on other grounds by*, *Taylor v.*

*Barkes*, 135 S. Ct. 2042 (2015). Here, as detailed above, Plaintiff alleges he made *all* of the Individual Moving Defendants aware of the issues he was having throughout the period from July, 2018 to August, 2019. Thus, this Court rejects this argument by Defendants Ortiz and Kodger at this time given Plaintiff's allegations regarding their personal involvement in the alleged deprivation of his constitutional rights.

In their reply brief, the Individual Moving Defendants next argue they are entitled to dismissal of the complaint against them because Plaintiff abandoned his *Bivens* claims. More specifically, they assert dismissal is warranted because Plaintiff did not address his *Bivens* claims in his response to their motion to dismiss. (*See* Dkt. No. 95). This Court disagrees. While Plaintiff incorrectly notes in his response that he is pursuing Section 1983 claims rather than claims pursuant to *Bivens*, this Court will not fault Plaintiff for improperly referring to Section 1983, which relates to state actors, as compared to *Bivens*, which applies to federal actors. The underlying analysis of the claims remain relatively the same. This abandonment argument by the Individual Moving Defendants is therefore also rejected.

Accordingly, the Individual Moving Defendants are not entitled to dismissal of the complaint, which includes rejecting their argument based on qualified immunity. Nevertheless, the Individual Moving Defendants may seek summary judgment based on qualified immunity after discovery should the facts ultimately warrant.

V.      **CONCLUSION**

For the following reasons, Moving Defendants' motion to dismiss is granted in part and denied in part. Plaintiff's FTCA claim against the United States is dismissed. The United States is terminated as a Defendant. The remainder of Moving Defendants' motion to dismiss is denied. An appropriate order will be entered.


DATED:  April 26, 2022                                  s/ Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge